Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
I
K-mart Corporation (en adelante “K-mart”), Sandra Hernández, Marielsa Colón, Billy Pérez, y las Sociedades Legales de Bienes Gananciales compuestos por éstos y sus respectivos cónyuges, nos solicitan que revisemos una “Resolución” emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, el 12 de marzo de 1999, archivada en autos copia de su notificación el 7 de abril de ese año. Mediante el referido dictamen se declaró “No Ha Lugar” una “Moción en Solicitud de Sentencia Sumaria” presentada por Wanda *1023 Ortiz Malavé (la recurrida) contra K-mart en el caso Civil Núm. GDP98-0056 sobre Daños y Perjuicios. El 22 de abril de 1999, K-mart presentó una moción solicitando reconsideración, la que fue rechazada de plano conforme a las disposiciones de la Regla 47 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.
Mediante nuestra “Resolución” del 7 de junio de 1999, le ordenamos a la recurrida mostrar causa por la cual la resolución objeto del recurso no debía ser revocada, quien se opuso a la expedición del auto.
Por su parte, el 5 de agosto de 1999, K-mart solicitó la paralización de los procedimientos. Mediante nuestra “Resolución” del 6 de agosto de 1999, paralizamos los procedimientos y le concedimos término a K-mart para replicar a la oposición a la expedición del auto solicitado. El 27 de septiembre del 1999, K-mart presentó su réplica.
Con el beneficio de los escritos, resolvemos. Veamos.
II
La recurrida trabajaba como empleada de las tiendas K-mart Corporation, en Cayey, Puerto Rico. Consecuencia de lo cual, el 24 y el 31 de enero de 1997, recibió su pago semanal correspondiente a las jomadas de trabajo del 9 al 15 de enero de 1997 y del 16 al 22 de enero de 1997, respectivamente.
Los pagos fueron efectuados en efectivo, mediante unos “vouchers”, por instrucciones de la Gerente de Recursos Humanos, como consecuencia de la recurrida no aparecer activa en el sistema de nóminas. La recurrida había estado acogida al Fondo del Seguro del Estado desde el 4 de diciembre del 1995 hasta enero del 1997, resultado de un accidente sufrido en el trabajo.
Posteriormente, el 7 de febrero de 1997, la recurrida recibió un cheque por la cantidad de $175.39 por concepto del salario que comprendía las semanas anteriormente señaladas, así como la jomada de trabajo rendida del 23 al 29 de febrero del mismo año.
Aparentemente, existía un acuerdo entre la recurrida y K-mart de que el exceso del pago recibido por la recurrida sería devuelto a K-mart. Alegadamente, el pago en exceso fue realizado, el 15 de febrero de 1997, mediante entrega a María Elsa Rivera (Rivera), empleada de K-mart en la ventanilla de “cash” de la referida tienda. La recurrida alegó que, a pesar de sus requerimientos, Rivera se negó a entregarle un recibo como evidencia de la devolución de los mencionados “vouchers”.
Tras varias gestiones de cobro, incluyendo reuniones entre K-mart y la recurrida, el 14 de mayo de 1991, Kmart presentó una denuncia contra la recurrida, ante el Tribunal de Distrito de Cayey, por el delito de Apropiación Ilegal. El 14 de mayo de 1997, en vista celebrada, se determinó no causa probable para acusar.
El 24 de marzo de 1998, la recurrida presentó la demanda sobre daños y perjuicios contra K-mart, Sandra Hernández, María Elsa Rivera, Billy Pérez y las sociedades de bienes gananciales compuesta por éstos y sus respectivos cónyuges. Alegó, en esencia, que K-mart, por conducto de sus empleados y agentes, realizó manifestaciones difamatorias en su contra al imputarle haberse apropiado ilegalmente de dinero en efectivo propiedad de K-mart.
El 6 de julio de 1998, K-mart presentó su contestación a la demanda. Negó todas las alegaciones mediante las cuales se le responsabilizaba a ella y a sus empleados de haber difamado a la recurrida y haberle ocasionado daños emocionales y a su reputación. Entre sus defensas afirmativas alegó que no hubo publicación y que de haberla habido, la comunicación a terceros fue limitada y por su naturaleza era privilegiada. Expuso, además, que *1024 cualquier daño sufrido por la recurrida fue causado por sus propios actos u omisiones.
El 30 de julio de 1998, la recurrida presentó una demanda enmendada a los fines de corregir unos errores en cuanto a fechas. K-mart presentó oportunamente su contestación.
El 17 de noviembre de 1998, K-mart presentó una “Moción en Solicitud de Sentencia Sumaria”. Solicitó la desestimación de las reclamaciones en daños y perjuicios por concepto de difamación y persecución maliciosa por no existir controversia material en tomo a la ausencia del elemento esencial de publicación, necesario para que se constituyera una causa de acción por difamación bajo la Ley de Libelo, según expuesto en Acevedo Santiago v. Western Digital Caribe, Inc., Op. del 21 de marzo de 1996, 96 J.T.S. 42.
Además, porque tampoco existía controversia sobre el hecho material de que no medió de parte de K-mart la instigación activa y maliciosa para que se iniciara un proceso criminal contra la recurrida, necesaria para que se constituyera una causa de acción por persecución maliciosa. Expresó, además, que no existió nexo entre los daños reclamados y la alegada difamación y/o persecución maliciosa.
El 29 de diciembre de 1998, la recurrida presentó una moción solicitando ser eximida de presentar una oposición a la moción de sentencia sumaria de K-mart, por razón a que alegadamente dicha moción estaba basada en la apreciación y teoría errónea de K-mart de que el caso trataba de una reclamación por difamación.
El 30 de diciembre de 1998, K-mart presentó una enmienda a la Contestación a la Demanda Enmendada a los únicos fines de añadir como defensa afirmativa que, siendo un patrono asegurado, le cobijaba la inmunidad patronal provista por la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. et seq. El 12 de enero del 1999, dicho foro permitió y, posteriormente, el 12 de enero del 1999, dicho foro requirió de la recurrida que presentara de inmediato su oposición a la moción de solicitud de sentencia sumaria de K-mart y le aclarara al tribunal y a ésta de qué trataba su reclamación.
El 12 de febrero de 1999, la recurrida presentó su oposición expresando que su reclamación era una general en daños y peijuicios por los alegados actos negligentes de K-mart, los cuales le ocasionaron daños emocionales. Alegó, además, que los actos negligentes a los que se refería en su demanda, respondían a que K-mart, a través de sus empleados, la acusó, primero en una reunión que se celebró en las facilidades de dicha entidad y luego denunciándola de haberse apropiado ilegalmente de un dinero perteneciente a K-mart.
Mediante su “Resolución” del 12 de marzo de 1999, aclarada mediante la “Resolución Enmendada Nunc Pro Tunc” del 20 de mayo de 1999, el foro de instancia determinó la improcedencia de la solicitud de sentencia sumaria, toda vez que la “acción es una general en daños y perjuicios y no una exclusivamente por difamación”.
Posterior a emitirse la anterior “Resolución”, el 29 de marzo de 1999, K-mart presentó una “Réplica a la Oposición a Moción en Solicitud de Sentencia Sumaria”. Expresó que la recurrida no había creado una controversia sobre los hechos materiales del caso y no había podido establecer los elementos de una causa de acción en daños y perjuicios bajo el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141.
Por razón de que cuando fue emitida la “Resolución” del 12 de marzo de 1999, el tribunal no tuvo ante su consideración el beneficio de la anterior réplica, K-mart presentó el 22 de abril de 1999, una “Moción en Solicitud de Reconsideración” acogiendo por referencia los planteamientos expuestos en la referida réplica. Esta moción fue rechazada de plano.
Inconforme con la determinación, K-mart cuestiona la actuación del foro recurrido, (a) por entender que no *1025 existe controversia de hechos que impida resolver el caso sumariamente, (b) al determinar que hubo una publicación negligente y, por ende, una reclamación por difamación, y (c) al no acoger sus argumentos sobre inmunidad calificada por ser patrono de la recurrida.
III
La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, faculta a una parte a presentar una moción con el fin de que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. Soto v. Caribe Hilton, Op. de 17 de octubre de 1994, 94 J.T.S. 128, a la pág. 311. De otra parte, la Regla 36.3 de dicho cuerpo legal, autoriza al tribunal dictar sentencia sumaria cuando no existe “controversia real sustancial en cuanto a ningún hecho material y [...] como cuestión de derecho debe dictarse sentencia a favor de la parte promovente”. Véanse, Rodríguez v. Secretario de Hacienda, Op. de 1 de marzo de 1994, 94 J.T.S. 20, a la pág. 11550; Corp. Presiding Bishop C.J.C. of LDS v. Purcell, 117 D.P.R. 714, 720-721 (1986); Tello Rivera v. Eastern Air Lines, 119 D.P.R. 83, 86 (1987). No hay duda que es un mecanismo eficaz para casos claros en ocasión del tribunal tener ante sí la verdad sobre todos los hechos pertinentes y no hace falta la celebración de un juicio en su fondo. J.A.D.M. v. Centro Comercial Plaza Carolina, 132 D.P.R. 785, 802 (1993).
El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de los pleitos que no presentan controversias genuinas y sustanciales de hechos materiales, por lo que resulta innecesaria la celebración del juicio plenario. Hurtado Latre v. Osuna y Frese, Op. de 30 de junio de 1995, 95 J.T.S. 98, a la pág. 1065. Utilizado correctamente, es un vehículo procesal adecuado que contribuye a descongestionar los calendarios judiciales. Pilot Insurance Company v. Crespo Martínez, Op. de 13 de julio de 1994, 94 J.T.S. 104, a la pág. 21.
Al dictar sentencia sumaria, el tribunal debe: (1) analizar los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obran en el expediente del tribunal, y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Corp. Presiding Bishop C.J.C. of LDS v. Purcell, supra.
A) K-mart alegó en su “Moción en Solicitud de Sentencia Sumaria” que la recurrida le adeudaba la suma de $178.50 en efectivo. Planteamiento que trató de evidenciar mediante la presentación de la deposición tomada a la recurrida el 31 de julio de 1998. A tales efectos, destacó lo siguiente (Petición de Certiorari, Transcripción de Toma de Deposición, a las págs. 86-87 del apéndice):

“R. Me dijo que si yo no pagaba el dinero me iba a despedir.

P. Okay. ¿Yentonces, qué usted hizo?

R. Bueno, le dije que ella tenía que hacer una investigación porque yo había pagado ese dinero y ella no me podía despedir así porque así, confiando en Marielsa. O sea, ella tenía que tener la duda de cualquiera de las dos y hacer una investigación. ”

Sin embargo, tanto de la transcripción como de la demanda, surge que la recurrida no reconoce la deuda y que, incluso, aduce el pago como parte de su defensa.
B) K-mart expuso y elaboró la doctrina y fundamentos por los cuales, a su entender, en el caso de autos, no era de aplicación la doctrina sobre difamación. Para sostener su posición, presentó fragmentos de la deposición antes mencionada, de la cual transcribimos a continuación distintas secciones (Petición de Certiorari, *1026 Transcripción de Toma de Deposición, a las págs. 94, 96 y 120 del apéndice):

“P. Vamos otra vez a la demanda. En la demanda, no sé si su abogada la instruyó de que es una demanda por difamación, ¿verdad?, de qué manera a usted se le difamó, por qué usted alega que se le difamó.

R. Bueno, porque ellos me acusaron a mí de apropiación ilegal y yo en ningún momento le robé nada a K-Mart.

P. ... Estábamos hablando horita, cuando interrumpimos, que su demanda es por difamación, y yo quisiera saber por qué usted alega en su demanda que a usted se le difamó.

R. Bueno, porque ellos me acusaron a mí de robo.

P. Unjú.

P. Para probar su reclamación, su reclamación de difamación, ¿ha pensado qué personas va a utilizar como testigos, si alguien?”

La recurrida acierta cuando indica que “[d]el propio lenguaje utilizado por la parte co-demandada K-Mart en su Moción de Sentencia Sumaria los mismos deducen o infieren que la acción radicada por la parte demandante es una de difamación al éstos utilizar el verbo se 'desprende'. ” K-mart gira su solicitud “basando la misma en su teoría del caso de difamación.” (Petición de Certiorari, Moción en Oposición a Moción de Sentencia Sumaria Presentada por la Parte Demandada K-Mart Corporation, a las págs. 149 y 151 del apéndice, respectivamente.) No podemos perder de vista que la recurrida señala, contrario a lo discutido por K-mart, que su reclamación está predicada en el Art. 1802 del Código Civil.
C) K-mart señala, igualmente, que la recurrida “descansó en las aseveraciones contenidas en su Demanda Enmendada incumpliendo su deber de presentar declaraciones juradas o documentos que controvirtieran los hechos materiales presentados por la peticionaria en su moción en solicitud de sentencia sumaria ”. (Petición de Certiorari, a las pág. 8.) Sin embargo, a K-mart se le escapó presentar en su solicitud prueba tendente a demostrar, a satisfacción del tribunal, las razones por las cuales considera que se justificaba la presencia de todas y cada una de las personas que estuvieron presentes en la reunión celebrada, como parte de las gestiones de cobro a la recurrida, en marzo de 1997:
. Dicha reunión se celebró a puerta cerrada y estuvieron presentes, además de Sandra Hernández [Gerente de Recursos Humanos], José Castro, Asistente del Gerente y gerente en tumo al momento de celebrarse la misma; Juan Veintidós, Gerente de Operaciones de la referida tienda; el Sr. Billy Pérez, Gerente de la referida tienda y supervisor de la demandante; Marisela Colón, la empleada que trabajaba en la oficina de efectivo de la tienda; y Loyda Morales, Gerente de la Oficina de Personal y supervisora de la Sra. Colón.
No encontramos declaración jurada o documento alguno (sin considerar la deposición tomada a la propia recurrida) para sostener su contención al respecto.
Según resuelto reiteradamente por nuestro Tribunal Supremo, en caso de que exista controversia en relación con los hechos, no procede dictar sentencia sumaria, y si existen dudas sobre la procedencia de la solicitud, o de las alegaciones respondientes, la misma debe ser resuelta en contra de la parte que la propuso. Véanse, Bonilla Medina v. Partido Nuevo Progresista, Op. de 13 de marzo de 1996, 96 J.T.S. 33, a la pág. 790; Rivera Santana v. Superior Packing, Inc., 132 D.P.R. 115, 133 (1992). En tales casos, los jueces se ven impedidos de pasar juicio *1027 sobre la credibilidad de los documentos que tienen ante sí, pues ese no es el momento para ello. Véanse, Meléndez v. Pesquera, 112 D.P.R. 86, 89 (1982); Rodríguez Meléndez v. Supermercado Amigo, 126 D.P.R. 117, 134 (1990); Rivera Santana v. Superior Packing, supra.
Basta que no exista controversia sobre aquellos hechos que son materiales y esenciales para que se dicte sentencia sumaria como cuestión de derecho. Corp. of the Presiding Bishop v. Purcell, 117 D.P.R. 714, 720 (1986).
Sin embargo, del estudio y análisis de los documentos y declaraciones juradas obrantes en autos, examinada de la forma más favorable para la recurrida, coincidimos con la determinación del Tribunal de Primera Instancia. Dicho foro estuvo en lo correcto al declarar “No Ha Lugar” la moción de sentencia sumaria presentada por Kmart, pues es necesaria la celebración de una vista en su fondo para dilucidar los hechos que no quedaron adecuadamente demostrados mediante la solicitud de sentencia sumaria. No tenemos la menor duda de que existen controversias en tomo a: 1) si la recurrida devolvió o no el dinero a K-mart; 2) si existe una reclamación válida bajo el Art. 1802, supra; y 3) si se justificaba la presencia de Sandra Hernández, Marielsa, José Castro, Juan Veintidós y Loida en la reunión efectuada por K-mart a principios de marzo de 1997, en su Oficina de Personal.
De otro modo, del examen a la resolución recurrida no se desprende que el foro de instancia haya determinado “que hubo publicación negligente de las expresiones realizadas por K-mart constituyéndose una causa de acción general en daños y perjuicios por difamación”. Por lo que no discutiremos el segundo planteamiento de error, por entender que el mismo no amerita nuestra intervención.
Finalmente, en lo que respecta al tercer señalamiento de error, tampoco le asiste la razón a K-mart.
K-mart alega que es acreedora a la inmunidad que la Ley de Compensaciones por Accidentes del Trabajo le garantiza, por ser patrono asegurado. “A cambio de esta protección el obrero renuncia a su derecho a traer contra el patrono asegurado la acción, en daños que emana del acto negligente del patrono que ocasionó dichos daños. Este quid pro quo es el eje central del esquema de seguro compulsorio...”. Pacheco Pietri v. E.L.A., 93 J.T.S. 117 (1993).
La Ley del Sistema de Compensaciones por Accidentes del Trabajo, según enmendada, 11 L.P.R.A. sec. 1 et seq., establece y reconoce el derecho de todo trabajador a estar protegido contra riesgos a la salud en su trabajo o empleo, que incluye la necesidad de proveer al trabajador de un sistema de seguridad social por lesiones en el empleo. Por ello, nuestra Asamblea Legislativa reconoció el principio de que el riesgo de sufrir accidentes del trabajo es uno de tipo fundamental que necesariamente requiere de acción gubernamental. Con la intención de proveer un acomodo justo y equitativo de los intereses de patronos y empleados, los trabajadores ceden en cierta medida su derecho a demandar a su patrono a cambio de un beneficio que puede eventualmente resultar menor, pero que es uno seguro, inmediato y cierto. (Véase, Exposición de Motivos de la referida ley).
De los escritos ante nuestra consideración surge que la recurrida estuvo acogida al Fondo del Seguro del Estado por un accidente del trabajo (en las facilidades de K-mart) y que disfrutó de los beneficios de la ley desde el 1995 hasta enero de 1997, cuando fue reinstalada en su trabajo. Posteriormente, surgen los hechos que generan su reclamación, situación a raíz de la cual la recurrida solicitó (por segunda ocasión) los beneficios de la ley de referencia. Por su parte, el Fondo determinó que la situación emocional (desorden depresivo o relacionado) no estaba relacionada con el trabajo de la recurrida, razón por la cual le fueron rechazados los beneficios que provee la ley. (Oposición a la Expedición del Auto de Certiorari, a la pág. 21.) El Fondo llegó a dicha conclusión mediante sus determinaciones del 17 de octubre y 24 de noviembre de 1997, las que, al día de hoy, son finales y *1028 firmes. (Oposición a la Expedición del Auto de Certiorari, a la pág. 21.)
Si bien no existe relación “con la lesión ocurrida en el empleo y como consecuencia de ésta, independientemente del grado de negligencia atribuible al patrono, Segarra Hernández v. Royal Bank de Puerto Rico, Op. del 1 de abril del 1998, 98 J.T.S. 37, a la pág. 748 (1998), para que el patrono pueda invocar con éxito la inmunidad patronal, tan sólo se requiere evaluar si existe un nexo o relación causal entre la lesión del obrero y su trabajo.” Segarra Hernández v. Royal Bank de Puerto Rico, supra, a la pág. 749. El Fondo estableció que la condición emocional de la recurrida no había sido ocasionada como consecuencia de algún accidente del trabajo o enfermedad ocupacional, por lo que no tenía derecho a recibir tratamiento médico a través de dicha agencia, cuando fundamentó su decisión en el Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, supra:

“Las disposiciones de ese capítulo serán aplicables a todos los obreros y empleados que trabajen para los patronos a quienes se rejiere el párrafo siguiente, que sufran lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocupación, según se especifican en la sección siguiente. ”

De aquí, que ni la recurrida ni K-mart puedan reclamar favorablemente los beneficios que ofrece la Ley de Compensaciones por Accidentes del Trabajo, supra. Coincidimos con el foro administrativo con su determinación de la inexistencia de un nexo o relación causal entre la lesión de la recurrida y su trabajo, por lo que K-mart no puede invocar exitosamente la inmunidad patronal. En consideración a lo cual, tampoco le asiste la razón a K-mart cuando pretende se desestimen las reclamaciones existentes en contra de los co-demandados.
La determinación de disponer de un litigio mediante el mecanismo de sentencia sumaria es un asunto inminentemente discrecional del Tribunal de Primera Instancia. Sólo en casos del abuso de la discreción conferida es que habremos de intervenir. PFZ Properties v. General Accident Insurance Corp., supra. Determinamos que en el caso ante nuestra consideración el foro recurrido estuvo en lo correcto al declarar “No Ha Lugar” la sentencia sumaria solicitada por K-mart.
En mérito a lo expuesto, denegamos la expedición del auto solicitado. Los procedimientos ante el Tribunal de Primera Instancia, seguirán su curso.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General