Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| EDP HOLDING CORP. representada por su presidente DON EFRAÍN SANTIAGO BABILONIA<br><br>Peticionaria<br><br>v.<br><br>CATALINO SÁNCHEZ RODRÍGUEZ, JUDITH BARRETO, la SOCIEDAD LEGAL DE GANACIALES compuesta por ambos y COMERCIAL SANTOS, INC.<br><br>Recurrida | KLCE202401120 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de AGUADILLA<br><br>Caso Núm.:<br>AG2019CV00863<br><br>Sobre:<br>Incumplimiento de Contrato,<br>Daños y Perjuicios |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de noviembre de 2024.

El 16 de octubre del año en curso, EDP Holding Corp. (en adelante EDP o la peticionaria) representada por su presidente, el Sr. Efraín Santiago Babilonia acudió ante nos mediante recurso de *Certiorari*. Allí, nos solicita la revocación de la *Resolución* dictada por el Tribunal de Primera Instancia, Sala de Aguadilla (en adelante TPI o foro primario) con fecha del 18 de septiembre de 2024. Mediante tal dictamen, reconsideró una decisión anterior en la que resolvió que los procedimientos del pleito debían continuar sobre la causa de acción por incumplimiento de contrato, así como por una por *culpa in contrahendo*. Al reconsiderar, el TPI concluyó que en la *Resolución* que se emitió en el pleito el 15 de febrero de 2022, así como en aquella emitida el 14 de marzo del mismo año, se determinó que entre las partes no hubo un contrato de compraventa válido. Por esta razón,

resolvió que tales determinaciones constituían la ley del caso y, por consiguiente, la peticionaria no tenía disponible la causa de acción de incumplimiento de contrato que instó contra los demandados de epígrafe.

Examinado el legajo apelativo, por virtud del derecho aplicable que a continuación consignamos, **expedimos** el auto de *certiorari* solicitado y confirmamos el dictamen recurrido.

-I-

El 1 de julio de 2019, EDP presentó *Demanda* por incumplimiento de contrato y daños y perjuicios contra Don Catalino Sánchez Rodríguez, Doña Judith Barreto y la Sociedad Legal de Gananciales compuesta por ambos. También incluyó como demandada a la corporación Comercial Santos, Inc., (en adelante conjuntamente los demandados). Allí se alegó que Don Catalino Sánchez Rodríguez (en adelante, señor Sánchez) contrató una agente de bienes raíces para la venta de varias de sus propiedades; que esta, en octubre de 2018, se comunicó con el Sr. Efraín Santiago Babilonia (en adelante, señor Santiago) para informarle de la venta y auscultar sobre su interés de adquirir una de estas; que las partes se reunieron en varias ocasiones para negociar; y que tras la aceptación de la propiedad a ser vendida y el precio convenido, solo quedó pendiente la otorgación de la escritura de compraventa.

De igual forma, en la *Demanda* se alegó que luego de firmarse el contrato de compraventa, el señor Sánchez, mediante maquinaciones insidiosas modificó las colindancias a ser vendidas; que actuó de mala fe y contra lo pactado por las partes, demorando intencionalmente la otorgación de la escritura de compraventa. Por tales actuaciones, se reclamaron graves daños económicos.

El 20 de agosto de 2019, todos los demandados sometieron *Contestación a Demanda*. Allí, admitieron alguno de los hechos alegados. No obstante, afirmaron que fue el señor Santiago quien actuó de mala fe y

dolosamente. Además, afirmativamente alegaron que las partes no llegaron a un acuerdo en cuanto al objeto y precio de compraventa, por lo que no había perfeccionado contrato alguno.

Así las cosas, el 25 de octubre de 2021, EDP sometió *Moción Soli[ci]tando Sentencia Sumaria Parcial*. En este escrito, propuso que no existía controversia sobre 37 hechos y que, basándose en estos, podía concluirse que entre las partes existía un contrato de compraventa válido y debía ordenarse la otorgación de la correspondiente escritura. El 2 de noviembre de 2021, los demandados se opusieron a la solicitud de sentencia sumaria.[1] Posteriormente, el 15 de febrero de 2022, el TPI emitió *Resolución* en la que atendió estos escritos y, a tales efectos, determinó que no existía controversia en cuanto a los siguientes hechos:

1. El 31 de octubre de 2018 y el 7 de diciembre de 2018, Comercial Santos Inc., representada por Don Catalino Sánchez Rodríguez, efectuó un contrato con la señora Soto Hernández, corredora de bienes raíces, licencia núm. 7946, para la venta de varias de sus propiedades. En este, se autorizó a la corredora a tramitar y vender las propiedades objeto de esta demanda.

2. En octubre o noviembre de 2018, la señora Soto Hernández se comunicó con el señor Santiago Babilonia, presidente de la corporación EDP Holding Corp., para ofrecerle la propiedad donde ubica Walgreens en la Carr. núm. 2, esquina Ave. Juan J. Santos en Aguadilla, Puerto Rico.

3. La señora Soto Hernández concertó una primera reunión entre las partes, la cual se llevó a cabo en el estacionamiento del referido Walgreens dentro del automóvil del señor Sánchez.

4. En dicha reunión estuvieron presentes el señor Sánchez Rodríguez (vendedor), la señora Soto Hernández (corredora de bienes raíces del Sr. Sánchez) y el señor Santiago Babilonia (comprador).

5. En dicha reunión el señor Sánchez Rodríguez, informó que vendería la propiedad donde se ubica el referido Walgreens. Dicha propiedad tiene un contrato de arrendamiento activo con Walgreens por un término de 60 años, de los cuales habían transcurrido 24 años y medio, además, mencionó que el pagaba el CRIM y Walgreens se lo reembolsaba. Durante los primeros 25 años de dicho contrato el término del contrato es ininterrumpido, luego el arrendador deberá notificar al dueño en 60 días, si se mantiene en la propiedad o desiste y se va. Dicho término se extiende por los próximos 5 años y así continúa sucesivamente hasta el final del contrato. Dicho

---

[1] Cabe destacar que, mediante *Sentencia Parcial* del 28 de enero de 2022, el foro primario desestimó la *Demanda* en cuanto al señor Sánchez, la Sra. Judith Barrero y la Sociedad Legal de Gananciales compuesta por estos.

contrato tiene una serie de restricciones de uso a favor de Walgreens, tanto en el predio donde se ubica Walgreens como en el predio sirviente al sur de donde se ubica la farmacia. Dicho lote sirvió en la segregación como predio sirviente.

6. Comercial Santos, Inc. no ha notificado a Walgreens para que ejerza su derecho de tanteo, según requiere el acuerdo de arrendamiento.

7. En esa reunión, el señor Sánchez Rodríguez le informó al señor Santiago Babilonia que el precio de compraventa del inmueble donde está localizado Walgreens era de $3,500[,]000.00.

8. La Sra. Soto Hernández coordinó una segunda reunión entre las partes para discutir la posible compraventa de otras propiedades adicionales. Entre los terrenos que el señor Santiago Babilonia deseaba incluir en las negociaciones estaban los lotes del Comercial Santos, Inc.: Paco 1, Paco 2 y parte del lote Santana.

9. La Sra. Soto Hernández coordinó una tercera reunión, el 12 de diciembre del 2018.

10. Ahora bien, en una de esas reuniones el señor Sánchez Rodríguez le informó al señor Santiago Babilonia que la totalidad del lote de terreno conocido como Santana no estaba a la venta por ser esencial para la operación de la ferretería de Comercial Santos.

11. El señor Catalino Sánchez Rodríguez seleccionó al Lcdo. José Ferrari Pérez como el notario ante quien podría otorgarse las escrituras de compraventa de llegarse a un acuerdo final entre las partes.

12. En enero de 2019, el señor Catalino Sánchez Rodríguez contrató al agrimensor Dennis Vargas para que preparara un plano de mensura. El agrimensor preparó el plano de mensura y se entregó una copia al señor Santiago Babilonia en enero de 2019. Ese plano reflejaba el terreno colindante a la ferretería Comercial Santos que era indispensable para la operación del establecimiento, según la demandada.

Luego de así determinar, y tras exponer el derecho aplicable, el TPI consignó lo que a continuación transcribimos:

Luego de un examen del derecho aplicable y los argumentos de las partes, determinamos que no procede la resolución sumaria del pleito. Como es sabido, nuestro Máximo Foro ha resuelto que no es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. **Ramos Pérez v. Univisión**, *supra*. Tampoco es aconsejable resolver sumariamente casos complejos o que envuelvan cuestiones de interés público ni procede dictarse sentencia sumaria cuando existan hechos en controversia pues la mera existencia de una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente. **Pepsi-Cola v. Mun. Cidra et al.,** 186 DPR 713, 756 (2012); **Vera v. Dr. Bravo,** *supra*.

Ahora bien, surge de los argumentos presentados por ambas partes y los documentos que obran en autos, que las partes no otorgaron un contrato de compraventa para las propiedades en controversia, por quedar varios asuntos pendientes por coordinar para el perfeccionamiento del contrato. En ese sentido, es forzoso concluir que la parte demandante no colocó en posición al tribunal de determinar que existió un contrato de compraventa válido entre las partes. Específicamente, la parte demandada señaló, y el tribunal le dio credibilidad, que entre las partes faltaba por negociar para lograr un acuerdo final los siguientes aspectos: 1) cuánto terreno del lote conocido como Santana adquiriría el señor Santiago Babilonia y cuánto retendría la ferretería Comercial Santos; 2) qué sucedería con el negocio jurídico de compraventa si Walgreens decidía ejercer su derecho de tanteo; 3) cómo se garantizaría la suma de $1,300,000.00 que se adeudaría por la parte compradora de celebrarse la compraventa; 4) qué sucedería si las agencias reguladores negaban el permiso para segregar o agrupar y, 5) si una corporación iba a comprar o el señor Santiago Babilonia lo haría en su carácter personal. Por otra parte, determinamos que permanece en controversia si las partes actuaron de buena fe y la procedencia o improcedencia de la doctrina de *culpa in contrahendo*, los cuales son asuntos que requieren evaluar elementos subjetivos, de intención y de credibilidad, que derrotan una moción de sentencia sumaria. **Ramos Pérez v. Univisión**, *supra*; **Pepsi-Cola v. Mun. Cidra et. al.,** *supra*. (Énfasis en el original)

Por estas razones, el foro primario declaró No Ha Lugar la moción de sentencia sumaria sometida por la peticionaria y ordenó la continuación de los procedimientos. Inconforme con lo allí resuelto, la peticionaria presentó *Moción de Reconsideración y Determinaciones de Hechos Adicionales*. Comercial Santos, Inc. (en adelante, la parte recurrida) se opuso a dicho escrito. El 14 de marzo de 2022, el TPI dictó *Resolución* en la cual acogió parcialmente la solicitud de determinaciones de hechos adicionales y añadió como hechos incontrovertidos, lo siguiente:

1. El Comercial Santos Inc., representado por don Catalino Sánchez Rodríguez, efectuó un contrato con la señora María V. Soto Hernández, corredora de bienes raíces, para que vendieran las siguientes propiedades: Walgreens, solar adyacente, Paco 1, Paco 2 y Santana.

2. Estos predios están inscritos en el Registro de la Propiedad y en sus respectivas escrituras se describe la cabida, colindancias y restricciones.

3. En una de las reuniones llevadas a cabo entre las partes, el señor Sánchez cogió un marcador y en el plano de "google", llevado por el comprador, delimitó las colindancias de las propiedades que estaba vendiendo y el precio de dicho terreno acordado.

4. Se estableció por acuerdo de ambas partes que el área que Comercial Santos no estaba vendiendo fuera marcado en tinta negra y tachado. Dicha área estaba localizada dentro del predio

en forma de "L" que no era parte de los predios de la negociación, el demandado lo tachó y le escribió "no va".

5. La decisión de realizar las conversaciones para vender los predios la realizó el vendedor de manera libre, voluntaria, sin coacción de clase alguna y con pleno conocimiento del negocio jurídico envuelto.

No obstante, estableció que no procedía la reconsideración solicitada y resaltó que los argumentos de la peticionaria, en conjunto con los hechos adicionales determinados, **no movían al tribunal "a variar su determinación de que entre las partes no hubo un contrato de compraventa válido.** Ahora bien, por existir una serie de hechos materiales en controversia, estas deberán ser atendidas en un juicio plenario." De esta determinación, la parte peticionaria acudió en revisión judicial mediante *certiorari*. En dicha ocasión, este Tribunal de Apelaciones denegó la expedición del recurso y los procedimientos del caso continuaron.

(Énfasis nuestro)

Luego de varios trámites procesales, el 7 de mayo de 2024, el foro primario celebró una audiencia, pues el caso fue referido a otra sala por inhibición del Juez Miguel Trabal Cuevas. Durante la misma, el abogado de la parte recurrida trajo a la atención del TPI la resolución en la que se determinó que las partes no otorgaron un contrato de compraventa y levantó interrogantes en cuanto a los daños que se reclaman, puesto que dicha reclamación descansa en la premisa de un contrato que no existe. La parte peticionaria, en cuanto a este asunto, ripostó que en la aludida resolución se rechazaron las alegaciones en cuanto a la existencia de un contrato por tenerse duda sobre este hecho basado en la prueba sometida para evidenciarlo. También se arguyó que, para contestar tal interrogante, el tribunal debía escuchar prueba en su día y atribuirle la credibilidad que la misma le merezca. El foro primario dio término a las partes para que sometieran respectivos memorandos de derecho sobre este asunto.[2] El 31

---

[2] Véase, Minuta del 7 de mayo de 2024, transcrita el día 10 del mismo mes y año.

de mayo de 2024, la recurrida así lo hizo. El 3 de junio de 2024, la peticionaria procedió a someter su memorando.

El 13 de agosto de 2024, notificada el 16, el TPI dictó *Resolución* en la que determinó que la causa de acción por incumplimiento de contrato sometida por la peticionaria aún estaba disponible. Sobre esto, enunció como a continuación transcribimos:

De una lectura integral de la referida resolución, nos es forzoso concluir que el tribunal determinó que, mediante su oposición, la parte demandada logró establecer que faltaban aspectos por negociar para lograr un acuerdo final y, por tanto, dicha parte logró controvertir el hecho sugerido por la parte demandante de que existió un contrato de compraventa válido entre las partes.

Nótese que el tribunal dispuso: "En atención a los fundamentos antes consignados, se declara NO HA LUGAR la moción de Sentencia Sumaria Parcial presentada por la parte demandante el 25 de octubre de 2021. Se ordena la continuación de los procedimientos". Con tal disposición el tribunal denegó la moción de sentencia sumaria presentada por la parte demandante. Sin embargo, no por ello desestimó la causa de acción por incumplimiento contractual. Así mismo, con la referida disposición, el tribunal ordenó la continuación de los procedimientos sin distinguir la causa de acción por incumplimiento contractual de la causa de acción por *culpa in contrahendo*. Es por ello que el tribunal emitió resolución, en lugar de emitir sentencia sumaria parcial.

En vista de que: 1) el tribunal emitió resolución y no sentencia sumaria parcial; 2) el tribunal no dispuso expresamente que se continuaría únicamente con la causa de acción de *culpa in contrahendo*; y 3) el tribunal atendió una solicitud de sentencia sumaria y su correspondiente oposición, por lo que, habiéndose emitido resolución, solo podemos concluir que la parte demandada controvirtió el hecho sugerido por la parte demandante de que existió un contrato de compraventa válido entre las partes; tenemos que concluir que los procedimientos deben continuar en cuanto a ambas causas de acción.

Por todo lo cual, se ordena la continuación de los procedimientos en cuanto a la causa de acción de incumplimiento de contrato, así como en cuanto a la causa de acción por *culpa in contrahendo*.

En desacuerdo con lo ahí concluido, la parte recurrida instó reconsideración. Habiéndose opuesto a la misma la peticionaria y sometido dúplica y réplica, el 18 de septiembre de 2024, el TPI dictó la resolución recurrida en la que expuso:

Evaluadas las mociones presentadas por las partes y, luego de un examen de la resolución emitida por el tribunal el 14 de marzo de 2022, este tribunal determina que procede la solicitud de reconsideración. Veamos.

Si bien es cierto que, el 15 de febrero de 2022, el tribunal emitió resolución y no sentencia sumaria parcial y que el tribunal no dispuso expresamente que se continuaría únicamente con la causa de acción de *culpa in contrahendo*, también es cierto que, en la resolución emitida el 14 de marzo de 2022 el tribunal expresó que, en la resolución emitida el 15 de febrero de 2022, "se determinó que las partes de epígrafe no habían otorgado un contrato de compraventa" y dispuso que "[l]os argumentos presentados por la parte demandante, en conjunto con las determinaciones de hechos adicionales adoptadas en esta resolución, no llevaron al tribunal a variar su determinación de que entre las partes no hubo un contrato de compraventa válido". La denegación de una moción de sentencia sumaria establece la ley del caso para ulteriores solicitudes en torno a los mismos fundamentos. Véase *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004) y *Sucn. Meléndez v. DACO*, 112 DPR 86, 89 (1982).

En el presente caso, mediante resoluciones emitidas el 15 de febrero de 2022 y el 14 de marzo de 2022, el tribunal determinó y reiteró que entre las partes no hubo un contrato de compraventa válido. **En este sentido, concluimos que la determinación del tribunal de que entre las partes no hubo un contrato de compraventa válido constituye la ley del caso** y revertimos nuestra conclusión de que, en la resolución del 15 de febrero de 2022, el tribunal concluyó que la parte demandada solo logró controvertir el hecho sugerido por la parte demandante de que existió un contrato de compraventa válido entre las partes. En vista de que la existencia de un contrato es un elemento indispensable para que la causa de acción por incumplimiento contractual prospere, es forzoso concluir que la parte demandante no tiene disponible dicha causa de acción.

Cabe señalar que la resolución emitida por este tribunal el 13 de agosto de 2024 tuvo el único propósito de establecer el estado de los procedimientos ante su consideración y no el de adjudicar ninguna de las causas de acción en sus méritos.

Por todo lo cual, se declara HA LUGAR la moción de reconsideración presentada por la parte demandada el 26 de agosto de 2024. En consecuencia, se revierte la conclusión de que la existencia de un contrato de compraventa válido entre las partes está en controversia y se sostiene la determinación de que no hubo un contrato de compraventa válido entre las partes.

De esta determinación acude la peticionaria ante nos mediante el recurso de epígrafe y señala la comisión de los siguientes errores:

PRIMERO: Erró el Honorable Tribunal de Primera Instancia al revertir la conclusión de la existencia de un contrato de compraventa válido entre las partes y se sostiene la determinación de que no hubo un contrato de compraventa válido entre las partes por unas determinaciones de hechos indicadas en las Resoluciones Interlocutorias del 15 de febrero y 14 de marzo de 2022, aun cuando las sentencias sumarias dispositivas fueron declaradas No Ha Lugar por existir controversia sustancia[l] sobre los hechos alegados.

SEGUNDO: Erró el Honorable Tribunal de Primera Instancia al determinar que las Resoluciones del Tribunal de Primera Instancia, declarando Sin Lugar mociones de Sentencia Sumaria por existir controversias sustanciales sobre los hechos alegados constituyen la ley del caso, sin cumplir con la Regla 42.3 de Procedimiento Civil

2009, 32 LPRA Ap. V, R. 42.3 y el caso normativo de <u>Cacho Pérez v. Hatton Gotay</u>, 195 DPR 1 (2016).

TERCERO: Erró el Honorable Tribunal de Primera Instancia al emitir Resolución el 18 de septiembre de 2024 interpretando las Resoluciones emitidas dos años antes por un juez de su misma categoría (Resolución de 1[5] de febrero de 2022 y 14 de marzo de 2022), eliminando la causa de acción por incumplimiento […] específico de contrato y limitándola a una vista de daños in contrahendo, por unas determinaciones de hechos incluidas en dicha resolución del Tribunal de Primera Instancia, sin embargo dictaminó declarar sin lugar las mociones dispositivas por existir controversia sustancial de hechos alegados por el primer juez de instancia Trabal Cuevas.

Atendido el recurso, el 18 de octubre de 2024, emitimos *Resolución* en la que concedimos 10 días a la recurrida para someter su posición. El 28 de octubre de este año, así lo hizo mediante *Oposición a Solicitud de Certiorari*.

-II-

*A.*

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. <u>McNeil Healthcare v. Mun. Las Piedras I</u>, 206 DPR 391, 403 (2021); <u>800 Ponce de León v. AIG</u>, 205 DPR 163 (2020). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". <u>Medina Nazario v. McNeil Healthcare LLC</u>, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. <u>McNeil Healthcare v. Mun. Las Piedras I</u>, *supra*; <u>Scotiabank v. ZAF Corp et al.</u>, 202 DPR 478 (2019). La mencionada Regla dispone que solo se expedirá un

recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." 800 Ponce de León v. AIG, *supra*. Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." McNeil Healthcare v. Mun. Las Piedras I, *supra*.

*B.*

Una **sentencia** se conoce como cualquier determinación del Tribunal de Primera Instancia que resuelve finalmente la cuestión litigiosa. Una **resolución**, por su parte, es cualquier dictamen que pone fin a un incidente dentro del proceso judicial.[3] En aquellos pleitos en los que haya comprendida más de una reclamación, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia. Al cumplirse con tales requisitos, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones allí establecidas.[4]

*C.*

En nuestro ordenamiento jurídico, es norma reiterada que los derechos y obligaciones que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. Berkan v.

---

[3] Regla 42 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.
[4] Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3

Mead Johnson Nutrition Puerto Rico, Inc., 204 DPR 183 (2020), al aludir a Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 606 (2000). Tal doctrina tiene como propósito el que los tribunales nos resistamos a reexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedido de los litigios. Además, promueve la estabilidad y certeza del derecho. *Id*.

La doctrina de la ley del caso aplica a controversias adjudicadas mediante un dictamen final y firme por los tribunales de instancia, así como los tribunales apelativos. Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1, 9 (2016). En cuanto a estos últimos, las determinaciones de los tribunales apelativos constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas, por lo que generalmente estas obligan, tanto al foro de instancia como al foro que las dictó si este vuelve a su consideración. Berkan v. Mead Johnson Nutrition, *supra*, a la pág. 201, al mencionar a Don Quixote Hotel v. Tribunal Superior, 100 DPR 19-29-30 (1971).

Ahora bien, un tribunal pudiera aplicar una norma de derecho distinta si entiende que sus determinaciones previas son erróneas y podría causarse una grave injusticia. Berkan v. Mead Johnson Nutrition, *supra,* al citar a Cacho Pérez v. Hatton Gotay y otros, *supra*.

**-III-**

Con el fin de atacar la decisión judicial recurrida, al discutir sus tres señalamientos de error, EDP argumenta que la resolución mediante la cual se denegó su solicitud de sentencia sumaria- ni aquella mediante la cual se denegó su reconsideración, más se añadieron hechos adicionales- no contiene el lenguaje que la Regla 43.2 de Procedimiento Civil, *supra,* exige cuando se determina eliminar una causa de acción. Ante tal hecho, señala que el expediente carece de una sentencia parcial en la que se hayan

dilucidados finalmente asuntos a los que pueda aplicárseles la doctrina de "ley del caso".

Añade, también, que no puede obviarse que la resolución que atendió su moción de sentencia sumaria, así como la objeción que ante esta se presentó, solo puso fin a dicho incidente procesal en el pleito y que la objeción de la recurrida para que se dilucide en un juicio la existencia de un contrato yace en que su oposición a la moción de sentencia sumaria está fundamentada en evidencia inadmisible. Destaca pues que puede notarse que el juzgador de hechos en dicho momento se limitó a denegar el escrito y ordenar la continuación de los procedimientos. Por tanto, reclama que en tal ocasión el tribunal no hizo manifestación expresa alguna en la que desestimara su causa de acción de incumplimiento de contrato, por lo que es errónea cualquier conclusión en contrario. Por último, la peticionaria argumenta que la determinación recurrida es improcedente en derecho, pues a través de esta un Juez Superior tuvo a bien revisar una decisión judicial emitida previamente en el caso, cuando dicha función le corresponde a los foros revisores.

La parte recurrida, por su parte, reclama que los argumentos levantados por EDP intentan tardíamente a modo de una disfrazada segunda reconsideración despertar una controversia ya adjudicada. De igual forma, niega la presencia de alguno de los criterios que la Regla 40 de nuestro Reglamento establece para guiar nuestra intervención en los dictámenes interlocutorios, por lo que el recurso debe ser denegado de su faz.

Examinado el expediente, encontramos claro que en la *Resolución* emitida en el caso el 15 de febrero de 2022 el foro primario resolvió en definitiva que no existía un contrato de compraventa entre las partes pues quedaron asuntos pendientes para su perfeccionamiento. Nos es fácil así concluir, pues acto seguido el TPI procedió a enumerar los asuntos que

encontró probado quedaron pendientes de negociarse entre las partes para lograr un acuerdo **final**. Las expresiones vertidas por el foro primario en ese momento al así resolver nos llevan a diferir con la peticionaria en cuanto a que este dictamen meramente resolvió un asunto procesal en el que se denegó una moción de sentencia sumaria y se ordenó la continuación de los procedimientos. Nótese que la continuidad ordenada se debió a que se encontró que permanecía en controversia si las partes actuaron de buena fe y la procedencia o improcedencia de la doctrina de *culpa in contrahendo*, asuntos que requieren evaluar elementos subjetivos de intención y credibilidad.

**La inexistencia de un contrato de compraventa perfeccionado constituye en el presente caso una controversia decidida en los méritos durante el trámite de este**. Cabe señalar y destacar que, de tal determinación judicial, Comercial Santos acudió en revisión judicial mediante el recurso de *certiorari* KLCE202200414. En tal ocasión, este Tribunal de Apelaciones denegó expedir el auto discrecional.[5] **Sin embargo, y pese a las implicaciones que la concluida inexistencia de un contrato podía tener para su causa, EDP no hizo lo mismo**. Por tanto, lo así resuelto para todos los efectos advino a ser la ley del caso. Es basándose en tal hecho y en que la existencia de un contrato es un elemento indispensable para que prospere la causa de acción por incumplimiento contractual, que en reconsideración el foro primario encontró forzoso concluir que la peticionaria no tenía disponible dicha causa de acción. Esa decisión, dado los eventos procesales ocurridos en el caso, nos parece correcta, por lo que hoy la sostenemos.

**-IV-**

Por los fundamentos antes esbozados, expedimos el auto de *certiorari* y confirmamos la *Resolución* recurrida.

---

[5] Véase *Resolución* del 26 de mayo de 2022 emitida en el caso KLCE202200414.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
